# (December 24, 1955)

█ In the Matter of the Claim of ICHOR FOGORTY, Respondent, against IRA M. YOUNG, Doing Business as I. M. YOUNG Co., et al., Appellants. WORKMEN'S COMPENSATON BOARD, Respondent.— Appeal by the employer and its insurance carrier from a decision of the Workmen's Compensation Board awarding permanent partial disability compensation "during the lifetime of the claimant, until proof is brought forward of a change in condition or earnings". Claimant, a citizen of British West Indies, sustained an injury to his back while lifting a heavy bag of potatoes in the course of his employment. He shortly thereafter returned to his residence in Jamaica, B. W. I. Appellants do not object to the finding of permanent partial disability but they contend that since claimant was a nonresident alien, upon their application, the board should have commuted the award by causing the alien to be paid one half of the commuted amount pursuant to section 17 of the Workmen's Compensation Law. Although the statute is not clearly worded, we interpret it as referring to both disability compensation and death benefits. It has been applied to an injured alien claimant who has become a nonresident (*Matter of Serrano* v. *Gammino Constr. Co.,* 281 App. Div. 736) and to the dependents of a deceased employee

(*Matter of Iannone* v. *Radory Constr. Corp.*, 285 App. Div. 751). However, the board contends that this statute cannot be applied to a nonschedule permanent partial disability award. The board states that paragraph v of subdivision 3 of section 15 of the Workmen's Compensation Law provides that the compensation shall be 66⅔% of the difference between the claimant's average weekly earnings and his wage earning capacity after the industrial accident " payable during the continuance of such partial disability, but subject to reconsideration of the degree of such impairment by the board on its own motion or upon application of any party in interest ". The board argues that if it commuted such an award it would be deprived of the continuing supervision referred to since it would no longer have jurisdiction of the claim and that it would be most difficult to compute the value of future payments. No distinction is made in section 17 between awards for nonschedule permanent partial disability and other awards. It speaks generally of " compensation ", " all compensation " and " future payments of compensation ". The purpose of section 17 was to avoid the difficulty of supervising and checking recipients of compensation payments who were aliens and not residents of the United States or Canada. It should, therefore, apply to cases of nonresident aliens, even though the board would have continuing supervision of their claims if they were residents. Mere mechanical difficulty in computing the value of future payments should not prevent the application of the section. The fact that claimant's degree of disability or his earning capacity might change in the future is a risk which has been placed upon the nonresident alien and the carrier alike. In our opinion, the award should have been commuted at one half of the commuted amount of compensation, as determined by the board. Decision and award reversed and claim remitted for further proceedings. Bergan, Coon and Zeller, JJ., concur. Halpern, J., dissents, in the following memorandum, in which Foster, P. J., concurs: I vote to affirm the decision and award of the Workmen's Compensation Board. Section 17 of the Workmen's Compensation Law provides that the board " shall, commute * * * all compensation to be paid to such aliens, by paying or causing to be paid to them one-half of the commuted amount of such compensation *as determined by the board.*" (Italics added.) The board has taken the position that it is not possible, by any reasonably acceptable method, to arrive at the determination of a commuted amount to be paid in the case of nonschedule permanent partial disability. The amount of the future payments will vary from time to time in accordance with " the degree of such impairment " as determined by the board during the course of the claimant's lifetime (Workmen's Compensation Law, § 15, subd. 3, par. v). There is no table of expectancy or other statistical table by which the variations of possible changes in the degree of impairment, upward or downward, may be taken into consideration in determining the present value of the award. Future degrees of impairment are not predictable by any method which can be accepted as a basis of commutation. The board would thus be making a wholly unsupported guess if it were to assign a present value, as the commuted amount of the award. Since the statute leaves it to the board to determine " the commuted amount of such compensation " it necessarily follows that if the board reasonably finds that it is incapable of determining a commuted amount, it is not required to commute the award. The statute is applicable only to those cases in which commutation is appropriate, that is, cases in which a reasonable basis for commutation can be found to exist. It should be borne in mind that there is no provision in the statute for the reduction of awards to nonresident aliens except by the commutation method. It is true that the board has undertaken, and we have upheld, the commutation of an award for permanent *total* disability but in such a case the

table of expectancy furnishes a readily available sound basis for determining the commuted amount. It may well be that an insurance carrier may elect to have a nonschedule permanent partial disability case treated as a case of permanent total disability for the purpose of obtaining the advantage of the 50% commutation under section 17 and may request commutation accordingly but no such request was made by the insurance carrier in this case and there is no suggestion in its brief upon this appeal that it desires to have the commutation determined on that basis. Section 17 is at best a harsh statute which finds very little justification in any principle of fairness. Since section 17 deals only with nonresident aliens and not with resident aliens, it does not violate the letter of the Constitution but it is contrary to the spirit of the Fourteenth Amendment which assures equal protection to all without distinction as to nationality. (*Takahashi* v. *Fish Comm.*, 334 U. S. 410; *Fujii* v. *State of California*, 38 Cal. 2d 718.) Section 17 has been overridden by numerous treaties (*Matter of Iannone* v. *Radory Constr. Corp.*, 285 App. Div. 751). We ought not to strain to extend it to cases in which its application would obviously be inappropriate.